ST. LOUIS, V. & T. H. R. CO. (ST. LOUIS INS. CO. v.). See Case No. 12,238.

ST. LOUIS WIRE-GOODS CO. (ADAMS & W. MANUF'G. CO. v.). See Case No. 72.

---

## Case No. 12,241.

### ST. LUKE'S HOSPITAL v. BARCLAY et al.

[3 Blatchf. 259.][1]

Circuit Court, S. D. New York. March, 1855.

COURTS—FEDERAL—JURISDICTION — CITIZENSHIP— EQUITY—TRUSTS—CONSULS.

1. Where a bill in equity is filed in this court, to stay proceedings at law pending in this court, the equity suit is auxiliary to the action at law, and may be maintained without regard to the citizenship or alienage of the parties to the record, and although the court may not have jurisdiction over the parties for other relief.

[Cited in Merchants' Nat. Bank of Lowell v. Leland. Case No. 9,452; Re Sabin. Id. 12,-195; O'Brien Co. v. Brown, Id. 10,399.]

2. A cestui que trust may maintain a bill for an injunction against his trustee, to prevent his collecting, appropriating, or disposing of the trust property.

3. This court has jurisdiction of an original civil suit in which the plaintiff is a citizen, and the defendant is an alien, even though the defendant is a resident foreign consul duly admitted as such by the president.

[Cited in State v. Lewis, 14 Fed. 67.]

4. The consular character of an alien only exempts him from the jurisdiction of state courts in civil suits, and he may be sued in this court as well as in a district court.

[Cited in Börs v. Preston, 111 U. S. 259, 4 Sup. Ct. 410; Ames v. State, 111 U. S. 468, 4 Sup. Ct. 446.]

This was a bill in equity, filed by St. Luke's Hospital, a New York corporation. The defendants [Anthony Barclay and Robert Bunch] were aliens. The bill prayed for an injunction to restrain them from prosecuting a suit instituted by them in this court, against the New York Life Insurance and Trust Company, for the recovery of $10,000, held on deposit by that company in the names of the defendants. The bill set forth, that in October, 1845, the rector, church wardens, and vestrymen of the Anglo-American free church of St. George the Martyr, became incorporated under the laws of New York, as a religious corporation; that in May, 1848, the corporation of the city of New York granted to the said religious corporation, a lot of land, situate on the 5th avenue, between 54th and 55th streets, upon condition that said church should erect thereon a hospital and chapel for the relief of British emi-

---

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

grants, on or before the 1st of May, 1853, in default whereof the premises were to revert to the city of New York; that the church did not erect such hospital and chapel within the time limited, and possessed no means for so doing, and had no prospect of obtaining them; that in April, 1850, the plaintiffs became incorporated, for the purpose of establishing, founding, carrying on and managing a hospital in New York; that it is part of the design of the plaintiffs that their hospital be connected with the Protestant Episcopal Church of the United States, as one of the charitable institutions of that church; that its benefits are mainly intended for the poor of that church; that a chapel is also to be attached to the hospital, in which services are to be conducted according to the liturgy and discipline of that church, the doctrine and discipline of which are substantially the same with those of the Church of England; that the rector, church wardens, and vestrymen of St. George the martyr, being unable to fulfil the conditions of such grant to them, agreed that the land so granted to them should be transferred to the plaintiffs, and be used for the erection of buildings for their corporate purposes, and of a hospital with a church or chapel of the Protestant Episcopal Church attached thereto, and that, in consideration of such transfer, a wing ward, or department of said hospital should be appropriated to the special benefit and relief of British emigrants, as a substitute for the hospital originally contemplated by said Church of St. George the Martyr; that, after such arrangement was made, but before it was fully consummated, Bunch, one of the defendants, proceeded to England, to collect funds from members of the Church of England, for the endowment and support of said proposed hospital and chapel, to be included in and form part of the plaintiff's buildings, and, for that purpose, circulated a paper seeking donations, and setting forth the object to be as above stated, and that a fusion of St. Luke's Hospital and the Church of St. George the Martyr had been made to that end; that about $11,000 was received by said Bunch, in contributions to the object, under such appeal, and was given in expectation that most of such contributions would be applied to the aid of the plaintiff's undertaking; that in October, 1852, the fusion was completed, and the officers of the Church of St. George the Martyr conveyed to the plaintiffs the premises granted to them by the city of New York, and the plaintiffs, on the same day, executed to the Church of St. George the Martyr, an agreement under seal, in fulfilment of the mutual arrangement entered into between the parties; that, thereupon, the plaintiffs entered into possession of the land, and had commenced the erection thereon of suitable buildings for a hospital and a church or chapel thereto annexed, and were prosecuting the same to completion with all diligence, and were possessed of means sufficient therefor; that subsequently the defendant Bunch paid to the plaintiffs $823.50, for the benefit of St. George's ward, alleging that to be the whole amount collected for that object; that, about the same time, he deposited in the New York Life Insurance and Trust Company the balance of the money so by him collected, being about $10,000, in his own name and that of the defendant Barclay, and that they had since claimed the exclusive right to hold and disburse said sum; that the principal part of said sum was intended, by the donors, for the British Emigrant Hospital in New York, now known as the ward of St. George the Martyr, in St. Luke's Hospital; and that said sum ought to be applied to the endowment and use of said hospital. The bill prayed that the defendants be decreed to apply and dispose of said fund according to the design and intent of the donors, and that such charitable design be carried into effect under the decree of this court; that the defendants account for said fund, and be enjoined from collecting or receiving any part thereof; that the said suit at law be stayed; and that the New York Life Insurance and Trust Company be directed to pay said fund into court. Barclay opposed the motion, on his answer.

Marshall S. Bidwell, for plaintiffs.
Charles Edwards, for defendants.

BETTS, District Judge. All the equities set up by the bill are denied by the answer, and until the proofs come in, the court will not inquire in which party the legal or equitable right to the fund in question is vested. In disposing of the motion to enjoin the suit at law prosecuted by the defendants, the court will limit its decision to the point, whether the action at law for the recovery of the fund in dispute shall be stayed, and, if so, upon what terms or conditions.

In opposition to the motion, it is insisted by the defendants, that the case is not within the cognizance of this court, either in respect to parties or subject matter; and that, if otherwise, then all the equity shown by the bill, for the interposition of the court to stay the action at law, is removed by the answer.

The jurisdiction of the court is resisted upon two grounds: First, that the defendants are both of them consuls of Great Britain, acknowledged by the United States, and are, in that capacity, exempt from suit in a circuit court of the United States; second, that no remedy can be had in this court upon the facts alleged in the bill.

This proceeding is not by original bill solely, seeking relief upon the equities of the case; but, in so far as regards the injunction asked to stay the proceedings at law, it is auxiliary to that action, and may be maintained here to that end, although the court may not have jurisdiction over the parties

for other relief. The authority of a circuit court over this class of suits has been considered and settled by the supreme court in two instances. In Simms v. Guthrie, 9 Cranch [13 U. S.] 19, it was decided, that a bill to enjoin a judgment at law in a circuit court of the United States, must be brought in that court, and that the court did not, in such case, regard a defect of jurisdiction in relation to some of the parties named. In Dunn v. Clarke, 8 Pet. [33 U. S.] 3, the court say, that an injunction bill to stay proceedings at law, is not considered as an original bill between the same parties, but that, if other parties are made in the bill, and different interests are involved, it must be considered, to that extent at least, an original bill, and the jurisdiction of the circuit court must depend upon the citizenship of the parties.

A cestui que trust may maintain a bill for an injunction against his trustee, to prevent his collecting, appropriating, or disposing of the trust property. 1 Eden, Inj. (by Waterman) 172, note 1. In this case, the allegations in the bill are sufficient to bring the parties within the jurisdiction of this court, if the bill be considered an original one in that point of view. The plaintiffs are averred to be citizens of the state of New York, and the defendants are aliens. The latter consideration is of no consequence in this case, except in so far as the proceeding may be regarded as an original suit; for, if the interest of the plaintiffs is of such a character that, under it, they would be entitled, in ordinary cases, to stay the suit prosecuted at law by the defendants for the recovery of the money in question, they are enabled to do this because the defendants are seeking, in that suit, to get possession of funds equitably belonging to the plaintiffs. And the capacity of the defendants, as suitors in the court, prosecuting for the recovery of the fund claimed by the plaintiffs, also fixes upon them a liability to be controlled, in the management of that suit, at the discretion of the court, as a court of equity. The court thus acquires jurisdiction over the present defendants in their character of parties to the record, without regard to the fact of citizenship or alienage.

If the present plaintiffs had been parties to the action at law prosecuted in this court by the defendants against The New York Life Insurance and Trust Company, they might have had that action stayed, as in ordinary cases, by bill or even motion, even though the official character of the defendants might exempt them from amenability to an original suit. The United States cannot be sued in any court of justice; but, if plaintiffs themselves, they stand subject to the authority of the court, in their capacity as suitors, in the same manner as private parties. Cohens v. Virginia, 6 Wheat. [21 U. S.] 406. Without regard, then, to the circumstance that the party applying by bill to stay proceedings at law is not a party to those proceedings, or is incapable of maintaining an original action in his own name against the one he seeks to enjoin, equity will entertain a bill in his favor for that purpose, when, on facts of which the court cannot take cognizance between the parties to the action at law, it is made to appear to be against conscience that the party prosecuting at law should proceed in his cause. 2 Story, Eq. Jur. § 875. The case of a trustee attempting to pervert his trust, or employ it to the prejudice of his cestui que trust, by a proceeding at law in which the cestui que trust would be barred of an adequate protection, is particularly appropriate for the interference of equity to restrain the proceeding by injunction. Id. § 882.

The defendants being, then, suitors at law, prosecuting for the possession of the fund which the bill avers to be a charity belonging to the plaintiffs to distribute, the effect of which suit, if successful, will be to transfer that trust fund from a public depository to the hands of individuals, the case is one proper for the interference of the court, to stay such change of possession, until the question of fiduciary right can be determined. That question belongs to equity, and necessarily, in the present case, because no defence can be made at law to the action there, inasmuch as the defendants took a certificate of deposit in their individual names, and the trust company will not be permitted to question their legal title, against that certificate. The protection of the present plaintiffs must be found in the aid of a court of equity, to prevent the charitable fund from being transferred to parties who deny the trust, and design to appropriate the money in a manner to place it out of the control of the plaintiffs.

The defendants, being aliens, are amenable to the jurisdiction of the circuit court in a suit in favor of citizens, and their consular character exempts them only from the jurisdiction of state courts. The act of congress gives to the district courts of the United States jurisdiction in civil actions, in suits against consuls, exclusively only of the state courts. By the law of nations, consuls are subject to the ordinary jurisdiction of the tribunals of the country to which they are accredited. 1 Kent, Comm. 43, 45; Wheat. Law Nat. p. 293, § 22; U. S. v. Ortega, 11 Wheat. [24 U. S.] 469, note. There seems, therefore, to be no legal impediment to the application of the eleventh section of the judiciary act of 1789 (1 Stat. 78) to actions by citizens against consuls, in the circuit courts of the United States.

On both points, in my opinion, this court has cognizance of this case, and the injunction prayed for ought to issue, and be enforced until the further order of the court.

Subsequently, Bunch pleaded to the jurisdiction of the court, that, at the commencement of the suit, he was the British consul

at Charleston, S. C., and Barclay was the British consul at New York, both of them admitted by the president, and that they ought to be sued in the supreme court of the United States, or in some district court of the United States, and not elsewhere. After argument before NELSON, Circuit Justice, and BETTS, District Judge, by Marshall S. Bidwell, for the plaintiffs, and Charles Edwards, for Bunch, the court (October 2d, 1855) overruled the plea, with costs.